JARKA v. FALLEEN DROP FORGE COMPANY, INC.

1. WORKMEN'S COMPENSATION—PROXIMATE CAUSE—INFECTION—AMPUTATION—EVIDENCE.

Finding of workmen's compensation appeal board that plaintiff milling machine operator's disability and amputation of the great toe resulted because of infection caused by a piece of steel imbedded in his toe and that such came from his place of employment *held*, supported by unchallenged testimony as to type and number of steel slivers in the vicinity where he was employed.

2. SAME—NOTICE OF INJURY—CLAIM FOR COMPENSATION—MISTAKE—AMPUTATION OF TOE.

Plaintiff who gave timely notice and filed a claim for compensation for injury to his toe, arising out of and in course of employment, within 6 months from time he entered hospital where it was amputated, entitled him to an award of compensation notwithstanding referee may have made a mistake as to the date the injury was sustained, which error was not corrected by the workmen's compensation appeal board and notwithstanding first claim was erroneously dismissed without plaintiff's consent and second claim may not have been filed until after the 6-month period had elapsed (CL 1948, § 412.15).

Appeal from Workmen's Compensation Appeal Board. Submitted April 16, 1958. (Docket No. 16, Calendar No. 47,473.) Decided June 12, 1958.

Edward F. Jarka presented his claim against Falleen Drop Forge Company, Inc., employer, and Michigan Mutual Liability Company, insurer, for

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Workmen's Compensation § 198.
[2]  58 Am Jur, Workmen's Compensation § 409 *et seq.*

compensation for loss of toe.  Award to plaintiff.
Defendants appeal.  Affirmed.

*Campbell & Campbell* (*Roger L. Campbell,* of counsel), for plaintiff.

*L. J. Carey* and *James L. Schueler* (*William G. Reamon,* of counsel), for defendants.

KELLY, J.  This is an appeal from an order of the workmen's compensation appeal board confirming the hearing referee's award of compensation to plaintiff.

Plaintiff, a man 55 years of age, worked in defendant's plant since 1936 and at the time of the alleged injury was employed as a die repair man operating a milling machine.  This machine was used for correcting die impressions thus working them back into proper form and shape.  The milling machine operation resulted in small steel slivers, or splinters, being thrown off, varying in size from tiny particles to 1 to 2 inches in length, and to such an extent that the floor around the milling machine would be covered with these splinters.  The splinters often lodged in the workmen's clothing, socks and shoes.

Plaintiff went to Dr. Hansen on December 21, 1953, with a swollen foot and ankle and a toe that was dark blue with a discoloration extending toward the knee.  The doctor sent him to the hospital and an X-ray disclosed a metallic foreign particle in the toe, lodged against the bone.

Dr. Hansen amputated the toe, and after the amputation brought to plaintiff's hospital room a piece of steel which he had taken from plaintiff's amputated toe.  The piece of steel was about 1/2 inch long, slightly curved, and wider and sharper on one side than on the other.  The doctor testified that this

piece of steel was embedded into the toe, against the bone, in such a way that it could not be felt externally; that it was the cause of the infection which required the amputation of the toe.

Plaintiff examined the piece of steel Dr. Hansen brought to his bedside, and described it as a "needle type, high-speed steel, that chips off, curled up in a needle form." He stated that he had seen countless numbers of similar particles of steel around the machine he operated for defendant company and that on many occasions he had had to remove similar pieces of steel from his clothes, socks and shoes; that there was no doubt in his mind but that the steel taken from his toe was a piece of steel that came off the milling machine he operated.

Plaintiff testified that the first time he knew there was a piece of steel in his toe was after the operation and that he didn't have the slightest idea when the piece of steel entered the toe.

Appellants contend:

"This conclusion (that plaintiff's disability arose out of and in the course of his employment) was apparently based on the fact that when plaintiff was operating a milling machine, which constituted one part of his duties with the defendant company, he worked in an area littered with small steel chips. This would show how the plaintiff might have come in contact with steel fragments similar to that taken from his toe. However, defendants contend that this merely goes to establish the opportunity for an injury. As to whether or not a steel fragment actually penetrated claimant's toe while he was engaged in the operation of the milling machine or in any other portion of his duties with the defendant company, it can certainly not be shown on the basis of anything contained in the record."

In answering appellants' contention in this regard, we set forth with complete approval the following finding of facts from the appeal board's opinion:

"It is clear that plaintiff's disability and the amputation of the great toe resulted because of infection caused by the piece of steel imbedded in his toe. Plaintiff's testimony as to the type and number of steel slivers in the vicinity where he was employed, stands unchallenged and undenied by defendant. There is no other suggested source of such a type of sliver. The only logical conclusion to be had from the proofs offered is that the foreign body discovered by X-ray came from plaintiff's place of employment."

Appellants claim that this award should be set aside because plaintiff did not file his application for hearing and adjustment of claim within 6 months and give notice of injury within 3 months, as provided by law. CL 1948, § 412.15 (Stat Ann 1950 Rev § 17.165).

Plaintiff was injured by a weight falling on his toe in June, 1953, and the referee found this to be the date of injury. The testimony of both plaintiff and Dr. Hansen establishes that the toe was amputated because of a steel sliver entering the toe sometime previous to the date plaintiff entered the hospital (December 21, 1953), and was not due to the June, 1953, injury. Notice of the amputation was given to defendant's foreman a few days after the amputation. On January 13, 1954, defendant employer filed a basic report of compensable injury and described the injury as follows:

"Gangrene of left great toe and infection of entire left leg to knee. Part of toe was amputated, a piece of steel was found in the toe after amputation."

The award appealed from does not date back to June, 1953, but commenced compensation from the

date plaintiff entered the hospital, December 21, 1953.

The fact that the referee might have made a mistake in regard to the date of injury and that the appeal board did not correct such mistake in its opinion, does not, under this record, call for a reversal.

Plaintiff filed his claim for compensation alleging injury to his toe, within the 6-month period. The fact that this first claim was dismissed by plaintiff's attorney (plaintiff testified, without his consent and that he thought that the hearing was being adjourned) and the fact that the present claim may not have been filed until after the 6-month period, did not take from the referee and the appeal board jurisdiction to decide this claim.

The injury arose out of and in the course of the employment. The defendant employer had sufficient notice of injury and claim for compensation was filed within the statutory period. Award affirmed, costs to appellee.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.